NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| JOHN L. RZONCA, | |
|      Plaintiff, | Civil No. 14-00003 (RMB) |
|          v. | **OPINION** |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
|      Defendant. | |

**APPEARANCES:**
Richard L. Frankel
Bross & Frankel, P.A.
102 Browning Lane, Bldg. C-1
Cherry Hill, NJ  08003
     Attorney for Plaintiff

Paul J. Fishman
Alexander L. Cristaudo
Office of the General Counsel
PO Box 41777
Philadelphia, PA  19101
     Attorneys for Defendant

**BUMB,** UNITED STATES DISTRICT JUDGE:

Plaintiff John L. Rzonca (the "Plaintiff") seeks judicial review pursuant to 42 U.S.C. §§ 405(g) of the final decision of the Acting Commissioner of Social Security (the "Commissioner") denying his application for a closed period of disability and Disability Insurance Benefits ("DIB"). For the reasons set forth

below, the Court will vacate the decision and remand for further proceedings consistent with this Opinion.

I.   **Background**

a. Procedural Background

Plaintiff protectively filed for DIB on August 2010, alleging a disability onset date of August 24, 2010 (the "alleged disability onset date"). (Administrative Record "R" 19, 128.) The claim was denied on March 22, 2011, and again on reconsideration on June 22, 2011. (Id. at 19.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held before the Honorable Joseph M. Hillegas on June 12, 2012. (Id. at 33.) Plaintiff testified at the hearing and was represented by counsel. (Id. at 33, 35.) Plaintiff had returned to work in January 2012 and thus amended his claim to a closed period of disability from August 24, 2010 to January 2012. (Id. at 36.)

On July 3, 2012, the ALJ issued a decision finding that Plaintiff has not been under a disability from the alleged disability onset date, August 24, 2010, through the date of decision and denying DIB. (Id. at 19-29.) Plaintiff timely filed an appeal, which was denied on October 29, 2013. (Id. at 13, 1-4.) At that time, the ALJ's decision became the final decision of the Commissioner.

b. Factual Background

2

Plaintiff was born on October 23, 1963 (id. at 28, 38, 128), and qualified as a "younger individual" on both his alleged disability onset and the date of the ALJ's decision. See 20 C.F.R. § 404.1563. Plaintiff, a 6-foot tall, 170-pound male, resides with his wife, who is on full disability for her lower back, and Plaintiff's 9-year-old son. (R. 38-39.) He has a GED. (Id. at 39.) Plaintiff complains of chronic neck and back pain, numbness throughout the body, herniated disc, and foot problems. (See, e.g., id. at 51, 58, 140.) Prior to the alleged disability onset date, Plaintiff worked as an auto mechanic. (Id. at 28, 43-44, 140-41, 164.) He returned to work at the substantial gainful activity level in January 2012. (Id. at 36-38.)

On January 14, 2008, after complaining of intermittent right hand numbness and tingling as well as shoulder pain, Plaintiff underwent an EMG of his right arm that showed evidence of "a very mild right median neuropathy at the wrist (carpal tunnel syndrome)." (Id. at 234.) The EMG showed no evidence of cervical radiculopathy. (Id.) Later that year, in June, Plaintiff had an epidural injection due to his complaints of back pain. (Id. at 233.)

Then, in early 2009, Plaintiff reported to Dr. Scott Dorfner complaining of chronic neck pain. (Id. at 229.) Dr. Dorfner diagnosed Plaintiff with cervical spondylosis and prescribed pain medications. (Id.) Plaintiff met with Dr.

Dorfner for follow-up appointments every two to three months from early 2009 through February 2010, as well as a few times between June 2011 and May 2012. (Id. at 224-29, 263-66.) Dr. Dorfner's treatment notes consistently check that Plaintiff has abnormal musculoskeletal and "HEENT" body systems, but they provide no explanation or clinical findings in support. (See, e.g., id. at 224-29.) On December 10, 2009, Plaintiff complained of foot pain, which Dr. Dorfner appears to have diagnosed as plantar fasciitis. (Id. at 225.)

On January 11, 2010, Dr. Irving Ratner consulted on Plaintiff's foot condition, noting that Plaintiff presented with painful masses in the plantar fascia on the medial side of both feet. (Id. at 235.) He recommended surgery to excise the lesions or prescription shoe inserts to make Plaintiff more comfortable. (Id.) Plaintiff appears not to have undergone surgery and the record contains no evidence that he obtained the inserts.

On February 17, 2010, Plaintiff saw Dr. Dorfner for increased pain and his pain medication dosage was increased. (Id. at 224.)

On August 30, 2010, Plaintiff presented to the emergency department with a right ankle injury. (Id. at 269-70.) At that time, he denied any neck or back pain and appeared comfortable. He had normal range of motion in his neck, as well as a normal inspection of his back with no tenderness noted. His upper

4

extremities were normal with normal range of motion, while the only limitations addressed in his lower extremities concerned his right ankle. (Id.) Aside from this visit to the emergency department, Plaintiff was not seen by a doctor until his consultative examination in March 2011. (Id. at 53.)

On March 2, 2011, Dr. Nithyashuba Khona conducted an orthopedic consultative examination of Plaintiff at the agency's request. (Id. at 53, 243-49.) Although Plaintiff was initially agreeable to the planned examination (id. at 53), he declined to fully participate in the examination once he arrived (id. at 243-49). Plaintiff informed Dr. Khona that his girlfriend does the cooking, laundry, and shopping, but that he tries to help with the cleaning and assists with caring for his son. (Id. at 244.) He also explained that he showers and dresses himself most of the time. Dr. Khona recorded that Plaintiff's gait was normal, and he could walk at a reasonable pace without a hand-held assistive device. (Id. at 244, 247.) However, Plaintiff declined to walk on heels and toes, squat, get on and off the examination table, or rise from a chair. Plaintiff further declined to participate in an examination of the cervical spine, upper or lower extremities, or spine, thoracic, and lumbar regions due to complaints of pain. (Id.) Accordingly, Dr. Khona determined that his prognosis was unknown and the examination

was "inconclusive [] secondary to poor participation." (Id. at 245.)

A few days later, diagnostic imaging of Plaintiff's cervical spine showed degenerative changes and degenerative disc disease. (Id. at 248.) Imaging of Plaintiff's thoracic spine showed "[m]ild degenerative change and degenerative disc disease." (Id. at 249.)

The state agency again requested an orthopedic evaluation, which was conducted on May 31, 2011 by Dr. Gregory Maslow. (Id. at 253-58.) Plaintiff informed Dr. Maslow that his right arm numbness began in August 2007, but was associated with no particular trauma. (Id. at 253.) He also complained of "constant and aching" neck pain, as well as right arm pain associated with intermittent right arm numbness. (Id.) Dr. Maslow observed that Plaintiff has a normal gait and balance, and "sits, stands, and walks comfortably," although he got off the exam table "somewhat slowly." (Id. at 254.) Plaintiff was able to stand on his toes and heels, but was unable to squat fully or arise from a supine position to a position with his legs fully extended and his hips fully flexed. (Id.) His cervical spine examination showed only 25% of the expected range of motion and Plaintiff complained of pain. He also had neck tenderness from the C5-C7 and in the paravertebrals. As to the thoracolumbar spine examination, Plaintiff experienced no tenderness or spasm and had full range

6

of motion. A shoulder examination also revealed no tenderness or instability, while strength testing was normal. An upper extremity examination showed full range of motion at the elbows, forearms, and wrists bilaterally, as well as no evidence of synovitis, tendonitis, or instability. An upper extremity neurological examination was normal, with normal sensory examination, strength testing, and pinch grip. The lower extremity examination and lower extremity neurological examination was similarly normal. (Id.)

Dr. Maslow also took an X-ray that showed "extensive degenerative disc changes with spurring at numerous levels but in general well maintained disc height." (Id. at 255.) He also reviewed a prior MRI, and opined that it showed evidence of disc herniation at C4-5 and C5-6. (Id.) He concluded that Plaintiff suffered discogenic neck pain with cervical radiculitis. Dr. Maslow further opined that Plaintiff "is not to be considered to be totally disabled and could manage a light duty job with lifting no more than twenty-five pounds on an occasional basis; ten to fifteen pounds would be a more reasonable restriction." (Id.) He also noted that Plaintiff's low back was not impaired.

At the hearing, Plaintiff testified that he had returned to work in January 2012, answering the phone at an automotive store and giving technical advice on cars. (Id. at 39-40.) He works approximately 4 hours a day, amounting to 20 hours a week, but

testified that even this small amount is "pushing it." (Id. at 40.) During this time, he alternates 30 minutes standing and 30 minutes sitting. (Id. at 41.) He also uses the computer but, because of the difficulties with his right hand, he uses his left hand. Plaintiff further testified that when he goes home, he ices his back. (Id.) The ALJ questioned Plaintiff as to what had changed that allowed him to return to work. Plaintiff responded that he was "tired of waiting for Social Security to do anything," and he was "tired of sitting on a couch doing nothing all day." (Id. at 45, 46.) He later testified that the job did not previously exist, and he would not have thought about doing it even if the job had existed. (Id. at 46.) When pressed further, Plaintiff claimed it hurt too much. However, he acknowledged that his condition is the "same"; he experienced no improvement in his condition that permitted him to work.

As to other daily activities, Plaintiff stated that he does not help out around the house but that his brother in law and wife do most of the housework. (Id. at 42.) He also does not drive. (Id. at 40.) However, according to the function reports that Plaintiff completed he prepares some meals, mostly frozen dinners, assists with the cleaning and some chores such as taking out the trash, and helps care for his son. (Id. at 153, 193.)

c. The ALJ's Decision

8

Applying the requisite five-step analysis, the ALJ concluded that Plaintiff met the insured status requirements of sections 216(i) and 223[1] of the Social Security Act through December 31, 2012 (the "date last insured"), and that Plaintiff has not engaged in substantial gainful activity since the alleged disability onset date, August 24, 2010, through the date of the decision. (R. 21.) The ALJ also found that Plaintiff had a severe impairment, discogenic neck pain with cervical radiculitis. (Id. at 21.) The ALJ also addressed Plaintiff's carpal tunnel syndrome and plantar fibromatosis, but found that these were non-severe because "they did not exist for a continuous period of twelve months, were responsive to medication, did not require any significant medical treatment, or did not result in any continuous exertional or nonexertional functional limitations." (Id.)

The ALJ next determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (Id. at 23.) Furthermore, based on his findings, the ALJ determined that Plaintiff had the

---

[1] Sections 216(i) and 223(d), of the Social Security Act define "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."

residual functional capacity to perform "light work as defined
in 20 CFR 404.1567(b) except that he can occasionally climb
ramps or stairs, balance, stoop, kneel, crouch and crawl but
never climb a ladder, rope or scaffold, with a frequent ability
to reach, and he should avoid all exposure to hazards." (Id. at
23.) In making these findings, the ALJ stated that Plaintiff's
reports of pain were not consistent with the medical record as a
whole, and that the credibility of his testimony regarding the
extent and severity of the impairment was reduced in light of
the pathology of the imaging studies, objective evaluations, and
lab test results. (Id. at 25-26.)

    After performing the RFC assessment, the ALJ determined
that Plaintiff was unable to perform any past relevant work.
(Id. at 28.) Furthermore, the ALJ concluded that Plaintiff was a
"younger individual" as of the alleged disability onset date,
had at least a high school education and was able to communicate
in English. He further determined that transferability of job
skills was immaterial to his determination under the Medical-
Vocational Rules. (Id. at 34.) Then, considering Plaintiff's age
(46 years old as of the alleged disability onset date (id. at
28)), education, work experience, and RFC as determined, the ALJ
found that there were jobs that existed in significant numbers
in the national economy that Plaintiff could have performed.
(Id. at 28-29.) Because Plaintiff had both exertional and non-

10

exertional impairments, the ALJ used the medical-vocational rules as a framework. He further stated that Plaintiff's "non-exertional impairments do not significantly erode the vocational base contemplated by the medical-vocational rules" and that "expert vocational testimony is not needed in this case to assess [Plaintiff's] work capability." (Id. at 29.) Thus, Plaintiff's application for DIB was denied.[2]

## II.  **Standard of Review**

A reviewing court must uphold the Commissioner of Social Security's factual findings if they are supported by "substantial evidence," even if the court would have decided the inquiry differently. 42 U.S.C. §§ 405(g), 1383(c)(3); Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). "Substantial evidence" means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Cons. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). Where the evidence is susceptible to "more than one rational interpretation, the Commissioner's conclusion must be upheld."

---

[2] In order to be entitled to DIB, a claimant must establish that she became disabled prior to the expiration of her insured status. 42 U.S.C. § 423(a)(1)(A),(c)(1).

<u>Ahearn v. Comm'r</u>, 165 F. App'x 212, 215 (3d Cir. 2006) (citing

<u>Daring v. Heckler</u>, 727 F.2d 64, 70 (3d Cir. 1984); <u>Monsour Med.</u>

<u>Ctr. v. Heckler</u>, 806 F.2d 1185, 1190-91 (3d Cir. 1986)).

     If faced with conflicting evidence, however, the

Commissioner "must adequately explain in the record his reason

for rejecting or discrediting competent evidence." <u>Ogden v.</u>

<u>Bowen</u>, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing <u>Brewster v.</u>

<u>Heckler</u>, 786 F.2d 581 (3d Cir. 1986)). Stated differently,

> [U]nless the [Commissioner] has analyzed all evidence and
> has sufficiently explained the weight he has given to
> obviously probative exhibits, to say that his decision is
> supported by evidence approaches an abdication of the
> court's duty to scrutinize the record as a whole to
> determine whether the conclusions reached are rational.

<u>Gober v. Matthews</u>, 574 F.2d 772, 776 (3d Cir. 1978) (quoting

<u>Arnold v. Sec'y of Health, Ed. & Welfare</u>, 567 F.2d 258, 259 (4th

Cir. 1977)) (internal quotations omitted); <u>see also</u> <u>Guerrero v.</u>

<u>Comm'r</u>, No. 05-1709, 2006 WL 1722356, at *3 (D.N.J. June 19,

2006) ("The ALJ's responsibility is to analyze all the evidence

and to provide adequate explanations when disregarding portions

of it."), <u>aff'd</u>, 249 F. App'x 289 (3d Cir. 2007).

     While the Commissioner's decision need not discuss "every

tidbit of evidence included in the record," <u>Hur v. Barnhart</u>, 94

F. App'x 130, 133 (3d Cir. 2004), it must consider all pertinent

medical and non-medical evidence and "explain [any]

conciliations and rejections," <u>Burnett v. Comm'r</u>, 220 F.3d 112,

122 (3d Cir. 2000). See also Fargnoli, 247 F.3d at 42 ("Although we do not expect the [administrative law judge] to make reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records, we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law.").

In addition to the "substantial evidence" inquiry, the reviewing court must also determine whether the ALJ applied the correct legal standards. See Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). The court's review of legal issues is plenary. Sykes, 228 F.3d at 262 (citing Schaudeck v. Comm'r, 181 F.3d 429, 431 (3d Cir. 1999)).

### "Disability" Defined

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a
> disability only if his physical or mental impairment
> or impairments are of such severity that he is not

13

only unable to do his previous work but cannot,
considering his age, education, and work experience,
engage in any other kind of substantial gainful work
which exists in the national economy, regardless of
whether such work exists in the immediate area in
which he lives, or whether a specific job vacancy
exists for him, or whether he would be hired if he
applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential
analysis for evaluating a claimant's disability, as outlined in
20 C.F.R. § 404.1520(a)(4)(i-v). In Plummer, 186 F.3d at 428,
the Third Circuit described the Commissioner's inquiry at each
step of this analysis:

> In step one, the Commissioner must determine whether
> the claimant is currently engaging in substantial
> gainful activity. 20 C.F.R. § 1520(a). If a claimant
> is found to be engaged in substantial activity, the
> disability claim will be denied. Bowen v. Yuckert, 482
> U.S. 137, 140 (1987).
>
> In step two, the Commissioner must determine whether
> the claimant is suffering from a severe impairment. 20
> C.F.R. § 404.1520(c). If the claimant fails to show
> that [his] impairments are "severe," [he] is
> ineligible for disability benefits.
>
> In step three, the Commissioner compares the medical
> evidence of the claimant's impairment to a list of
> impairments presumed severe enough to preclude any
> gainful work. 20 C.F.R. § 404.1520(d). If a claimant
> does not suffer from a listed impairment or its
> equivalent, the analysis proceeds to steps four and
> five.
>
> Step four requires the ALJ to consider whether the
> claimant retains the residual functional capacity to
> perform [his] past relevant work. 20 C.F.R.
> § 404.1520(d). The claimant bears the burden of
> demonstrating an inability to return to [his] past
> relevant work. Adorno v. Shalala, 40 F.3d 43, 46 (3d

Cir. 1994). If the claimant is unable to resume [his] former occupation, the evaluation moves to the final step.

At this [fifth] stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with [his] medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether [he] is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523. The ALJ will often seek the assistance of a vocational expert at this fifth step. See Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984).

## III. <u>Analysis</u>

Plaintiff argues that the ALJ (1) erred at Step Four in fashioning an RFC that included non-exertional impairments but failing to consult a vocational expert to determine the effect of these limitations on the occupational base; (2) erred in finding Plaintiff less than fully credible; and (3) erred by failing to adequately weigh the opinions of Dr. Dorfner, Plaintiff's treating physician. Because the Court finds that the ALJ failed to fully address the reasons why Plaintiff's non-exertional limitations do not significantly erode his occupational base, the Court will remand for further proceedings.

a. <u>The ALJ Erred in Fashioning Plaintiff's RFC</u>

Plaintiff argues that the ALJ violated Acquiescence Ruling 01-1(3) by failing to consult a vocational expert or provide Plaintiff notice of his intention to take administrative notice that the additional non-exertional limitations did not erode the occupational basis. The Commission issued Acquiescence Ruling 01-1(3) after the Third Circuit ruling in Sykes v. Apfel, 228 F.3d 259 (3d Cir. 2000). In Sykes, the Court held that, where a claimant has non-exertional limitations, the Commission could not establish the existence of significant numbers of jobs in the national economy by relying on the grids alone, even if the grids are used only as a framework. 228 F.3d at 274. Rather, when a claimant has exertional and non-exertional limitations, the Commission must present evidence consisting of (1) the testimony of a vocational expert or other similar evidence or (2) official administrative notice that a non-exertional limitation does not significantly erode a claimant's occupational base. Id. at 261. Under the latter option, the Commission must provide the claimant with notice.

In response, the Commission issued AR 01-1(3), applicable to cases in the Third Circuit:

> Before denying disability benefits at step five when a claimant has a nonexertional limitation(s), we must: (1) take or produce vocational evidence such as from a vocational expert, the DOT or other similar evidence (such as a learned treatise); or (2) provide notice that we intend to take or are taking administrative notice of the fact that the particular nonexertional

16

> limitation(s) does not significantly erode the
> occupational job base, and allow the claimant the
> opportunity to respond before we deny the claim.
>
> This Ruling does not apply to claims where we rely on
> an SSR that includes a statement explaining how the
> particular nonexertional limitation(s) under
> consideration in the claim being adjudicated affects a
> claimant's occupational job base. When we rely on such
> an SSR to support our finding that jobs exist in the
> national economy that the claimant can do, we will
> include a citation to the SSR in our determination or
> decision.

Thus, contrary to Plaintiff's argument, the ALJ need not have

relied upon testimony from a vocational expert but may instead

rely upon an SSR. See Allen v. Barnhart, 417 F.3d 396, 406 (3d

Cir. 2005). Moreover, the Third Circuit has since held that,

while the ALJ should provide notice of his intention to rely

upon an SSR as evidence of an undiminished occupational base,

the failure to do so means the court should apply close scrutiny

to the ALJ's reliance on an SSR. Meyler v. Comm'r of Soc. Sec.,

238 F. App'x 884, 890 (3d Cir. 2007) (citing Allen, 417 F.3d at

408); see also Smalls v. Comm'r of Soc. Sec., No. 09-2048, 2010

WL 2925102, at *9 (D.N.J. July 19, 2010) ("The Court disagrees

and finds that, under Allen, advanced notice is not

unequivocally required in every circumstance. But, under the

Allen's holding, when advanced warning is not given, the ALJ's

reliance on the Ruling is subject to 'close scrutiny.'");

Breslin v. Comm'r of Soc. Sec., 509 F. App'x 149, 155 (3d Cir.

2013). Thus, it was not an error for the ALJ to find that the

testimony of a vocational expert was unnecessary, or to rely upon SSRs without providing Plaintiff with advance notice.

However, if the ALJ relies on an SSR instead of a vocational expert to find that the occupational base is undiminished, then the SSR "must be crystal-clear that the SSR is probative as to the way in which the nonexertional limitations impact the ability to work, and thus, the occupational base." Allen, 417 F.3d at 407. In addition, the ALJ must specifically cite the SSR or SSRs relied upon and "explain why the SSR is 'relevant or controlling.'" See Acquiescence Ruling 01-1(3); see also Williams v. Comm'r of Soc. Sec., No. 12-5637, 2013 WL 4500335, at *9 (D.N.J. Aug. 21, 2013) (citing Allen, 417 F.3d at 406). Here, Defendant argues that the ALJ properly cited and relied upon SSRs 83-14 and 85-15 in support of his conclusion that Plaintiff's non-exertional limitations do not significantly erode his occupational base. While the Court agrees that these SSRs do seem to adequately address all of the non-exertional limitations, the Court finds that the ALJ did not provide a sufficient explanation of how these SSRs address Plaintiff's limitations and thus remand on this point is necessary.

Contrary to Defendant's argument, the ALJ cited SSRs 83-14 and 85-15 only as support for the principle that where a claimant has non-exertional limitations, the medical-vocational

guidelines provide a framework for the disability determination. (See R. 28.) Several paragraphs later, the ALJ conclusorily asserts that Plaintiff's non-exertional limitations do not significantly erode his occupational base but provides no citation to any SSRs, much less an explanation of their applicability. See Buffington v. Comm'r of Soc. Sec., No. 12-100, 2013 WL 796311, at *10-11 (D.N.J. March 4, 2013) (finding "it is not clear that the ALJ based his actual analysis on any of the SSRs cited, despite the boilerplate references" and remanding for further consideration of how the plaintiff's limitations affect her ability to perform SGA).

The Court notes, however, that on remand the ALJ may very well rely upon SSRs 83-14 and 85-15 to reach the same conclusion. But the ALJ must so explain. In fashioning Plaintiff's RFC, the ALJ determined that Plaintiff could perform light work that involved a frequent ability to reach; occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs; no exposure to hazards; and no climbing of ladders, ropes, or scaffolds. (R. 23.) SSR 85-15 provides that "[i]f a person can stoop occasionally . . . [the] light occupational base is virtually intact" and that "[t]his is also true for crouching." It further explains that "crawling . . . is a relatively rare activity . . . and limitations on the ability to crawl would be of little significance in the broad world of

work," which is "also true of kneeling . . . ." Id. SSR 85-15 also addresses the limitations climbing and balancing: "Where a person has some limitation in climbing and balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad world of work." Plaintiff contends that because he has other non-exertional limitations, SSR 85-15 cannot be used to support the ALJ's finding here. The ALJ should address this on remand.

Because the ALJ determined that Plaintiff could engage in frequent reaching, SSR 85-15 can be relied upon to find that this minimal limitation does not significantly erode Plaintiff's occupational base. It recognizes that "[s]ignificant limitations of reaching or handling, [] may eliminate a large number of occupations a person could otherwise do" but that other degrees would have a different impact. Here, the limitation is minimal—an individual who can frequently reach is able to do so for up to six hours in an eight-hour day. See SSR 83-10 ("'Frequent' means occurring from one-third to two-thirds of the time.").[3]

---

[3] Plaintiff's argument as to the definition of "significant" focuses on the wrong issue; Plaintiff contends that frequent reaching is a significant limitation as it is consistent with a "severe" impairment. But, here, the ALJ is determining whether or not the occupational base is eroded and not whether Plaintiff has a severe impairment. Indeed, the ALJ had already determined at Step Two that Plaintiff has a severe impairment.

SSR 83-14 explains that "there are nonexertional limitations or restrictions which have very little or no effect on the unskilled light occupational base. Examples are inability to ascend or descend scaffolding, poles, and ropes; inability to crawl on hands and knees . . . ." Moreover, both SSRs suggest that minimal environmental restrictions do not significantly impact the numbers of available jobs in the national economy. SSR 83-14 ("In addition, this SSR provides that '[e]nvironmental restrictions, such as the need to avoid exposure to feathers, would also not significantly affect the potential unskilled light occupational base.'"); SSR 85-15 ("Surroundings which an individual may need to avoid because of impairment include . . . recognized hazards such as unprotected elevations and dangerous moving machinery . . . . A person with a seizure disorder who is restricted only from being on unprotected elevations and near dangerous moving machinery is an example of someone whose environmental restriction does not have a significant effect on work that exist at all exertional levels."). However, in order to fully assess the impact of Plaintiff's limitations, the ALJ must clarify the type and extent of the hazards that Plaintiff must avoid. See 85-15 ("Where the environmental restriction falls between very little and excessive, resolution of the issue will generally require consultation of occupational reference

materials or the services of a VS."). In doing so, the ALJ may determine that it appropriate to consult a vocational expert.

Thus, while it may be that the ALJ will reach the same conclusion, the Court feels constrained to remand because of the ALJ's failure to fully explain why the non-exertional limitations do not significantly erode Plaintiff's occupational base. Because the Court finds that remand on this point is necessary, it need not address Plaintiff's other arguments.

s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge

Dated: January 6, 2015